## STATE vs. MORRIS CHECKVER.

1. LICENSES—OCCUPATIONS—JUNK SHOPS—VIOLATIONS OF STATUTE—EVIDENCE.

Under *Rev. Code* 1915, § 1200, requiring every junk dealer to keep a book in which every purchase made shall be entered with an account and description of the goods, the price paid, the time of the purchase, and the description of the person selling the goods, no conviction can be had if an entry of the required items, is made in a book whether that book be furnished by the police department or not, so that a book purchased from one to whom it was furnished by the police department was admissible to show whether or not the entry had been made.

2. LICENSES—OCCUPATIONS—JUNK SHOPS—CRIMINAL PROSECUTIONS—DEFENSES.

*Rev. Code* 1915, § 1200, requiring junk dealers to make entries of purchases of junk, must be complied with, so that failure to make an entry, due to the fact that a police officer took the book for use in a trial, telling the junk dealer to make the entries later, was no defense to a prosecution for noncompliance.

3. LICENSES — OCCUPATIONS — JUNK SHOPS — CRIMINAL PROSECUTIONS — BURDEN OF PROOF.

In a prosecution under *Rev. Code* 1915, § 1200, requiring junk dealers to keep a certain record of all purchases made, it is incumbent upon the state to prove beyond a reasonable doubt that defendant was, at the time of the offense, a junk dealer, that he purchased from a certain individual certain goods, and that he did not make the required entries.

4. LICENSES—OCCUPATIONS—JUNK SHOPS—EFFECT OF PARTNERSHIP.

Under *Rev. Code* 1915, § 1200, requiring certain entries to be made by junk dealers on purchasing goods, a purchase by one of a partnership makes the other partner personally liable for any violation of the law.

5. CRIMINAL LAW—QUANTUM OF EVIDENCE REQUIRED—"REASONABLE DOUBT."

In a criminal prosecution, the defendant is entitled to acquittal if the jury entertains "reasonable doubt" of his guilt, but that doubt must not be a mere vague, whimsical, or fanciful doubt.

6. LICENSES—OCCUPATIONS—JUNK SHOPS—CRIMINAL PROSECUTIONS— QUESTIONS FOR JURY.

In a prosecution for violation of the junk dealer's law, the jury is the exclusive judge of the weight and value of the testimony, which it must reconcile if possible, and, if not, must weigh the testimony upon the appearance of the witnesses, their apparent fairness, their manner on the stand, their ability to testify, and their knowledge of the things to which they testify.

*(September* 28, 1915.)

Judges CONRAD and HEISEL sitting.

*Armon D. Chaytor, Jr.,* Deputy Attorney General, for the state.

*J. Frank Ball* for the defendant.

Court of General Sessions, New Castle County, September Term, 1915.

INDICTMENT for violation of *Section* 1200, *Revised Code* of 1915, No. 71, September Term, 1915.

Morris Checkver was indicted for violation of the above-mentioned statute, that is, for failing to enter in a book provided by the police department of the City of Wilmington, any description of the kind or quantity of certain pieces of brass purchased from one M., on April 27, 1915, and for failing to enter in said book any description of the person from whom the brass was purchased, as required by the statute.

At the trial it was shown that the book which the accused had, although of the kind which the police department furnishes

to junk dealers for the purpose of keeping a record of their purchases, was obtained by the accused from one J., whose business he had purchased. The book, which failed to show any entry of the purchase of the brass from one M., as charged in the indictment, after formal proofs was offered in evidence by the State. Counsel for defendant objected to its admission as immaterial.

HEISEL, J.: [1] We think that if the defendant had made the entry in this book of the purchase of the brass as required by the statute, that he could not be convicted under the circumstances for not complying with this law; that if he had such a book as is furnished by the police department, whether furnished directly to him by the police department or indirectly to him through somebody else, it is the kind of book that is furnished by the police department, and comes into his possession and he is using it for the purpose designated in the statute, he would be complying with the law. Therefore we think this book is admissible and overrule the objection.

When the state had rested, counsel for accused moved the court to instruct the jury to find a verdict of not guilty, because the first count in the indictment charged (1) that the accused did not make certain required entries in the book; (2) that he did not make them in a book prescribed by law. The state has not proved that the accused had the book in his possession at the time of the alleged purchase of the brass, but it has been shown that the book had been taken away from the accused by a police officer to be used as evidence in a case in the Municipal Court, and that the accused by direction of the police officer put his purchases while the book was out of his possession on slips of paper, which he could not find when asked for them later. It has not been shown that the book had been returned to the accused at the time of the purchase of the brass in question.

HEISEL, J.:—[2] We decline to so instruct the jury, for the reason that this statute requires a junk dealer to do certain things, and whatever a police officer of the City of Wilmington may tell him to do or not to do does not relieve him of the respon-

sibility of doing those things. He had no right to proceed with the junk dealer's business until he had such a book. If the police department failed to deliver him a book, and if he chose to go on buying junk contrary to law, he takes his own chance, and the police department of the City of Wilmington by not furnishing him with the book cannot relieve him of his responsibility. It is his duty to have such a book before proceeding with his business as junk dealer.

[3] The defense of the accused was that at the time he is charged with violating the statute, he was not in the junk business for himself, having previously sold out to his former partner, Jacob Protejal; and that he was, at the time of the alleged purchase of brass, acting as a clerk for hire.

HEISEL, J., charging the jury:

In this case the state charges that the defendant, Morris Checkver, is a junk dealer in this city, and as such junk dealer, did on the twenty-seventh day of April of this year, purchase from one Joseph Murphy certain pieces of brass, and did not enter in a book furnished for that purpose, the information designated in *Section* 1200 which is as follows:

"Every person, corporation or firm conducting the business of a pawnbroker or junk dealer shall keep a book or books in which shall be fairly written in English at the time of each loan or purchase an accurate account and description of the goods, articles or things pawned, pledged or purchased, the amount of money loaned thereon or the amount of money paid therefor, the time of pledging or purchasing the same and the rate of interest to be paid on such loan, together with the description of the person pawning or pledging or selling such goods, articles or things, including the color of his complexion, color of eyes and hair and his or her stature and general appearance. The said book or books shall be prepared and furnished to such person, corporation or firm so conducting the business of a pawnbroker or junk dealer by the police department of the City of Wilmington at the expense of such person, corporation or firm so conducting the business of pawnbroker or junk dealer."

This section makes it the duty of a junk dealer in this city, to enter in a book supplied by the police department of the City of Wilmington, fairly written in English, at the time any property is purchased by them, an accurate account and description of the goods and articles purchased, the amount paid for them,

together with a description of the person selling the goods or articles, including the color of his complexion, color of eyes and hair and his stature and general appearance.

It is incumbent upon the state to show to your satisfaction beyond a reasonable doubt all the essential elements of the offense charged; that is, that the defendant, Morris Checkver, was, at the time of the alleged offense, a junk dealer in the City of Wilmington, that as such, he purchased from Joseph Murphy certain pieces of brass, and did not make the entries in such a book as required by *Section* 1200 of the *Code*. If you are so satisfied by the evidence produced in the case, your verdict should be guilty.

The defendant does not deny purchasing the brass from Joseph Murphy, nor does he admit it, but claims that if he bought it, he was acting for one Jacob Protejal and was not himself a junk dealer; we say to you, gentlemen, that before convicting the defendant you must be satisfied that, at the time of purchasing the brass, he was a junk dealer.

[4] We also charge you that if you are satisfied from the evidence that the defendant and Jacob Protejal were partners in the junk business, at the time of the alleged offense, that such partnership would constitute the defendant a junk dealer under the terms of *Section* 1200, *Revised Code* of 1915, and he would be personally liable for any violation of the terms of said section.

[5] You have the evidence that has been produced by the state, as well as that produced by the defendant. After considering it carefully, if you have a reasonable doubt of the guilt of the prisoner, he is entitled to the benefit of such reasonable doubt and should be acquitted. A reasonable doubt means a *reasonable* doubt, not a mere vague, whimsical or fanciful doubt, but a real doubt.

[6] In considering the evidence, we want to say further to you, that where the evidence is conflicting, as it is in this case, you should reconcile it if you can, but if you cannot reconcile it, then you should believe those witnesses whom you deem most worthy of belief, taking into consideration in arriving at your conclusion, their interest, bias or prejudice, if any, and also

their opportunity of knowing that about which they are testifying.

It is for you to say whether or not the evidence produced has satisfied you beyond a reasonable doubt of the guilt of the defendant.

Verdict, guilty with a recommendation of mercy.